# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **GARY SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case Number: 06-2197 (RWR)** |
| | ) | |
| **UNITED STATES MARSHALS SERVICE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## FEDERAL DEFENDANT'S MOTION TO DISMISS OR,
## IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Plaintiff Gary L. Smith, proceeding *pro se*, has filed suit against the Federal Defendant, the U.S. Marshals Service ("USMS"), for "lack of response" to his request for documents, under the Freedom of Information Act ("FOIA")[1] and the Privacy Act[2], related to "property seized" in connection with his latest conviction involving child pornography ("First Request"). *See* Complaint ¶ 6.

The USMS respectfully moves this Court, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), for an order dismissing the Complaint for failure to state a claim, on two grounds. First, Plaintiff was required to actually exhaust his administrative remedies prior to filing suit, as Plaintiff's Complaint acknowledges that Defendant notified Plaintiff that it had received the First Request and had "commenced a search for documents responsive to your request." *See* Compl. ¶ 5; Government Exhibit B. Second, Defendant produced all documents responsive to the First Request prior to the date that the Complaint was filed, and Plaintiff did not file an administrative

---

[1] See 5 U.S.C. § 552.

[2] See 5 U.S.C. § 552a.

appeal.  *See* Government Exh. C.  Thus, because Plaintiff has failed to exhaust his administrative remedies, the Complaint should be dismissed.

Alternatively, Defendant respectfully requests summary judgment in its favor, pursuant to Fed. R. Civ. P. 56, on the ground that no genuine issue of material fact exists and Defendant is entitled to judgment as a matter of law.

*Pro se* Plaintiff should take notice that any factual assertions contained in the attached Memorandum in Support of this Motion and supporting exhibits may be accepted by the Court as true unless the Plaintiff submits his own affidavit or other documentary evidence contradicting the assertions therein.  *See Neal v. Kelly*, 963 F.2d 453 (D.C. Cir. 1992).  Furthermore, should this Court treat Defendant's Motion to Dismiss as a motion for summary judgment, because of the attached exhibits, the Federal Rules of Civil Procedure provide:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); *see Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988) ( *pro se* party may lose if he fails to respond to a dispositive motion); Local Rule 56.1 ("the court may assume that facts identified by the moving party in its statement of facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion").

In support of this Motion, the Court is referred to the (1) accompanying Memorandum of Points and Authorities; (2) Statement of Material Facts As to Which There is No Genuine Issue; (3) supporting Exhibits, (4) Declaration of William E. Bordley, and (5) proposed Order attached hereto.

Respectfully  submitted,

Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney


s/Sherease Louis
SHEREASE LOUIS
Special Assistant United States Attorney
United States Attorney's Office, Civil Division
555 4th Street, NW
Washington, D.C. 20530

Of Counsel:
William E. Bordley, Esq.
Associate General Counsel
FOIA/PA Officer
United States Marshals Service
Washington, D.C.

3

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **GARY SMITH,** | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | )    **Case Number: 06-2197 (RWR)** |
| | ) |
| **UNITED STATES MARSHALS SERVICE,** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**
**OR, IN THE ALTERATIVE, FOR SUMMARY JUDGMENT**

Plaintiff Gary L. Smith, a convicted sex offender, has sued the federal Defendant, the United States Marshals Service ("USMS"), pursuant to the Freedom of Information Act ("FOIA")[1] and the Privacy Act.[2]  The suit concerns a request, received by Defendant on October 12, 2006, for "any information relating to myself and property seized" concerning the seizure of child pornography ("Seizure") that led to Plaintiff's most recent conviction involving the sexual abuse of children ("First Request").  *See* Government Exhibits A and D; *see also U.S. v. Smith*, 367 F.3d 748 (8th Cir. 2004).  Subsequent to the filing of this Complaint, Plaintiff filed a new request ("Second Request"), wherein he provided additional information regarding the warrant identification number and location where the evidence that led to his conviction was seized, and requested more specific information, including, *inter alia*, "copies of the photographs" of one of his young victims.  *See* Government Exhibit D and attached affidavit of Cameron Roe ¶ 17.

The USMS moves to dismiss the Complaint, pursuant to Rules 12(b)(1) and (6) of the Fed. R. Civ. P., on two grounds.  First, Plaintiff failed to properly exhaust his administrative

---

[1]    *See* 5 U.S.C. § 552.

[2]    *See* 5 U.S.C. § 552a

remedies prior to filing suit. As Plaintiff's Complaint acknowledges on its face, Defendant did indeed timely respond to Plaintiff's First Request - within five days of receipt of the request - by letter dated October 17, 2006. *See* Government Exhibit B. The letter notified Plaintiff that the First Request had been received and that the USMS had "commenced a search for documents responsive to your request." *Id.* Thus, there is no support for Plaintiff's allegation that he deemed Defendant's reply "a lack of response by the Defendant" and a constructive "exhaustion of his administrative remedies, pursuant to Title 5 U.S.C. § 552(a)(6)(E)(iii) and 552a(g)(1)(B)." Because Plaintiff received a timely reply from Defendant, Plaintiff was required to actually exhaust his administrative remedies prior to filing suit. *See Lowe v. Drug Enforcement Admin., Slip Copy,* 2007 WL 2104309, (D.D.C.,July 22, 2007)("[w]here an agency has entirely failed to respond to a request within the statutory deadlines, if the agency replies before the requester files suit, the exhaustion requirement still applies."), *citing Judicial Watch v. Rossotti*, 326 F. 3d 1309, 1310 (D.C.Cir. 2003)(*citing Oglesby*, 920 F.2d at 64-65).

Second, on November 20, 2006, prior to the date the Complaint was filed, Defendant produced all documents in its possession that were responsive to the First Request, and Plaintiff did not file an administrative appeal. *See* Government Exhibit C. Instead, Plaintiff filed a new request under the FOIA and Privacy Act ("Second Request"). *See* Government Exhibit D. The Second Request provided additional identifying information relating to *evidence* that was seized, as opposed to assets or property, and sought more specific documents related to the Seizure. *Id.* Because Plaintiff was required to file an administrative appeal of the First Request prior to filing suit, and did not, Plaintiff has failed to exhaust his administrative remedies. Accordingly, this action should be dismissed as to the First Request on that basis alone. Alternatively, should the

Court reach the merits of this lawsuit, summary judgment should be granted in favor of the Defendant.

**ISSUES**

1. Whether Plaintiff was required to actually, not constructively, exhaust his administrative remedies prior to filing suit?

2. If Plaintiff was not required to actually exhaust his administrative remedies prior to filing suit, whether Defendant's response was proper?

**BACKGROUND**

Plaintiff, proceeding *pro se*, is serving a lengthy prison sentence of 235 months for convictions on "production of child pornography, interstate transportation of child pornography, and reproduction of child pornography for interstate distribution." *See U.S. v. Smith*, 367 F.3d 748 (8th Cir. 2004). Plaintiff also has a prior conviction for "first-degree sexual abuse related to child exploitation" concerning his children's fifteen year old babysitter. *Id; see also* CR No. 2:02-MJ-026, United States District Court for Northern District of Georgia, Gainesville Division. Plaintiff is currently confined at the United States Penitentiary ("USP"), Coleman, Florida, also known as USP Coleman II, a high security prison facility. See Docket Entry 11. Previously, Plaintiff was confined at the Federal Prison Camp in Atlanta, Georgia, also a high security penitentiary. *See* Complaint caption. While there, in a letter dated September 29, 2006, Plaintiff filed a request under the FOIA and the Privacy Act for copies of "the regulations that define and govern the U.S. Marshals Services" and "any information related to myself and property seized that belonged to me . . . from Judicial District: Northern Georgia (Atlanta) . . . Seizure Number

3

305A-BA-80998-E6522-KC (Northern Georgia- Atlanta.)."  Government Exhibit A.  This request was received by the USMS on October 12, 2006.  Bordley Decl. ¶ 2.

The USMS identified Plaintiff's request as Request No. 2007USMS9963 and, by letter to Plaintiff dated October 17, 2006, acknowledged receipt of Plaintiff's request, and advised Plaintiff that the USMS had "commenced a search for documents responsive to your request." . Bordley Decl. ¶ 3.  The letter further advised Plaintiff that the USMS would contact Plaintiff when the processing of the request was completed.  *Id*.; *see* Government Exhibit B.

By letter dated November 20, 2006, the USMS produced documents responsive to Plaintiff's request.  Bordley Decl. ¶ 8.  The cover letter informed Plaintiff that the USMS was releasing a two (2) page public record which described the functions of the USMS.  *Id.*  The letter also notified Plaintiff that no records responsive to Plaintiff's request regarding the Seizure were located. *Id.*   Plaintiff was informed that if he provided additional information, such as an asset description or a CATS identification number, the USMS would conduct a new search for information. *Id.; see* Government Exhibit C.  The letter also advised Plaintiff of his right to appeal and the procedure for doing so.  Plaintiff did not file an administrative appeal.  *See* Complaint  ¶¶ 6, 7.

On November 20, 2006, Plaintiff mailed the Complaint for filing, alleging essentially that he had constructively exhausted his claims due to the "lack of response by the Defendant." Complaint ¶ 6.  The Complaint was filed on December 26, 2006, and seeks to compel the Defendant to fulfill the Plaintiff's FOIA/PA request within ten days of the Court's Order, and requests that the Defendant bear all costs and fees. *Id.*  ¶¶ 9, 10.

During the interval between the time the Complaint was mailed and the time it was filed, Plaintiff filed a new FOIA request, dated December 4, 2006, and received by the USMS on December 8, 2006 ("Second Request"). Bordley Decl. ¶ 9. The Second Request was assigned Request No. 2007USMS10081. Pursuant to this Second Request, Plaintiff requested specific copies of documents pertaining to a search warrant for Criminal Case No. 2:02-MJ-026, including, *inter alia*, "copies of the photographs" of one of his young victims. *See* Government Exhibit D. Additionally, Plaintiff attached to his Second Request an Application and Affidavit for Search Warrant, Case No. 2:02-M-026, which identified a specific address of 4417 Waterworks Road, Jackson County, Georgia, for the Seizure. *Id.*

By letter dated December 15, 2006, the USMS OGC acknowledged receipt of Plaintiff's Second Request. Bordley Decl. ¶ 10. The letter advised Plaintiff that a search for responsive documents had commenced, and that USMS would contact Plaintiff when the processing of the Second Request was completed. *See* Government Exhibit E.

By letter dated January 22, 2007, the USMS informed Plaintiff that 91 pages of documents were located which were responsive to Request No. 2007USMS10081. Bordley Decl. ¶ 16. The USMS referred one (1) page to the Federal Bureau of Prisons ("BOP") for a disclosure determination and a direct response to Plaintiff. *Id.* In total, the USMS released 90 pages to Plaintiff. Of the 90 pages, 56 pages were released in their entirety, and 34 pages were released with deletions of names of government employees, and names, addresses and/or telephone numbers of third-party individuals pursuant to exemption 7(C). *Id.* *See* Exhibit F.

By letter dated February 5, 2007, Plaintiff submitted an administrative appeal of the Second Request to the Department of Justice, Office of Information and Privacy (OIP), relating

to Plaintiff's Second Request.  Bordley Decl. ¶ 17.  The USMS received a copy of OIP's letter to

Plaintiff dated May 14, 2007, affirming the USMS's action on Plaintiff's Second Request, and

advising Plaintiff of his right to seek judicial review. (See Exhibits G and H). *Id.*

## STANDARD OF REVIEW

### A.    Motions to Dismiss

When a FOIA plaintiff attempts to obtain judicial review without first properly

undertaking full and timely administrative exhaustion, the lawsuit is subject to ready dismissal

because "exhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under

FOIA."  *Wilbur v. CIA* 355 F.3d 675, 676 (D.C. Cir. 2004) (per curiam)(citing *Oglesby v. U.S.*

*Dep't of the Army*, 920 F.2d 57, 61-64, 65 n.9 (D.C. Cir. 1990); *see Hamilton Securities Group,*

*Inc. v. U.S. Dep't Housing Urban Dev.,*106 F. Supp. 2d. 23 (D.D.C. 2000) (dismissal for lack of

subject matter jurisdiction under Rule 12(b)(1) where Plaintiff failed to exhaust administrative

remedies under FOIA).  *Hildalgo v. Fed. Bureau of Investigation*, 344 F.3d 1256, 1258 (D.C.

Cir. 2003)(matter remanded to district court to dismiss complaint under Rule 12(b)(6), where

plaintiff failed to exhaust administrative remedies).

### A.    Dismissal under Rule 12(b)(1).

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) "presents a threshold challenge to the

court's jurisdiction." *Gardner v. U.S.*, No. Civ. A. 96-1467, 1999 WL 164412, *2 (D.D.C. Jan.

29, 1999), *aff'd,* 213 F.3d 735 (D.C. Cir. 2000) and *cert. denied*, 531 U.S. 1153 (2001), *quoting,*

*Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir.1987); *see also* 4 Wright & Miller:  Federal Prac.

& Proc. § 1350 (R12)(2002 Supplement)(". . . subject matter jurisdiction deals with the power of

the court to hear the plaintiff's claims in the first place . . . .").  A court may resolve a motion

under Rule 12(b)(1) in two ways.  First, the court may determine the motion based solely on the

complaint.  *Herbert v. Nat'l Academy of Science*, 974 F.2d 192, 197 (D.C. Cir. 1992).

Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations

of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the

conflicting evidence.  *See id.; see also Cureton v. United States Marshal Serv.*, 322 F. Supp.2d

23, 2004 WL 1435124, *2 (D.D.C. June 28, 2004).

### B.    Dismissal under Rule 12(b)(6).

Under Rule 12(b)(6), the Court is to treat the complaint's factual allegations as true, *see*

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164

(1993), and must grant a plaintiff  "the benefit of all inferences that can be derived from the facts

alleged," *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir.1979).  However, "the Court

need not accept inferences drawn by the plaintiff if those inferences are unsupported by the facts

alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions."  *Akintomide*

*v. United States*, 99-MS-0055 (PLF), 2000 WL 1693739, at *1 (D.D.C. Oct. 31, 2000) (citing

*National Treasury Employees Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996) and

*Kowal v. MCI Communication Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  As the Supreme

Court recently clarified in *Bell Atlantic Corp. v. Twombly*,

> a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief"
> requires more than labels and conclusions . . . . [f]actual allegations must be
> enough to raise a right to relief above the speculative level on the assumption that
> all of the complaint's allegations are true . . . .

127 S. Ct. 1955, 1959 (U.S. May 21, 2007) (NO. 05-1126).  In deciding a Rule 12(b)(6) motion,

the court may consider additional evidence, "including court files, records and letters of official

actions or decisions of government agencies and administrative bodies, documents referenced

and incorporated in the complaint and documents referenced in the complaint or essential to a

plaintiff's claim which are attached to a defendant's motion." *See Arizmendi v. Lawson*, 914 F.

Supp. 1157, 1160-61 (E.D. Pa. 1996).

### C.    Evidentiary Standards for a Motion for Summary Judgment

FOIA cases are typically decided on motions for summary judgment.  *See Cappabianca v.*

*Comm'r, U.S. Customs Serv.*, 847 F.Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in

issue are properly identified, FOIA cases should be handled on motions for summary judgment")

(*citing Miscavige v. U.S. Internal Revenue Serv.*, 2 F.3d 366, 368 (11th Cir. 1993)).  An agency is

entitled to summary judgment once it demonstrates that no material facts are in dispute and that

each document that falls within the class requested either has been produced, not withheld, is

unidentifiable, or is exempt from disclosure. *Students Against Genocide v. U.S. Dep't of State*,

257 F.3d 828, 833 (D.C. Cir. 2001); *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368 (D.C.

Cir. 1980).  When the pleadings, supplemented by affidavits or declarations, show no genuine

issue as to any material fact and the defendant is entitled to judgment as a matter of law,

summary judgment should be granted to the defendant.  *Perry v. Block*, 684 F.2d 121 (D.C. Cir.

1982).  Further, where no genuine dispute exists as to any material fact, summary judgment is

required.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  A genuine issue of material fact

is one that would change the outcome of the litigation.  *Id*. at 247.  "The burden on the moving

party may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an

absence of evidence to support the non-moving party's case."  *Sweats Fashions, Inc. v. Pannill*

*Knitting Co., Inc.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987).

8

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Thus, to avoid summary judgment, the plaintiff must present some objective evidence that would enable the court to find he is entitled to relief.  In *Celotex Corp. v. Catrett*, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute.  477 U.S. 317, 322-23 (1986).

In *Anderson*, the Supreme Court explained under what circumstances summary judgment is appropriate:

> If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted . . . [T]he mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff.

*Anderson*, 477 U.S. at 252; *see also Laningham v. Navy*, 813 F.2d 1236, 1242 (D.C. Cir.  1987) (non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor).  In *Celotex*, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  477 U.S. at 327 (*quoting* Fed. R. Civ. P. 1).

**ARGUMENT**

I.    **Plaintiff Failed to Exhaust His Administrative Remedies.**

FOIA requests are intended to be handled administratively, in the first instance, not in District Court. *See, e.g. Spannaus v. U.S. Dep't of Justice,* 824 F.2d 52, 58 (D.C.Cir. 1987). This goal would be thwarted if a FOIA requester could bypass the administrative process and litigate a FOIA request without first giving the agency an opportunity to address and resolve that request. *See Dettmann v. U.S. Dep't of Justice*, 802 F.2d 1472, 1477 (D.C. Cir. 1986). To further this goal, the law provides that a FOIA plaintiff's failure to exhaust administrative remedies deprives the Court of subject matter jurisdiction over the unexhausted claims. *See Oglesby*, 920 F.2d at 61-62. Indeed, "[a] plaintiff's FOIA lawsuit is subject to dismissal for lack of subject matter jurisdiction if he fails to exhaust all administrative remedies." *Trueblood v. U.S. Dep't of the Treasury*, 943 F. Supp. 64, 67 (D.D.C. 1996); *accord Dettmann v. U.S. Dep't of Justice,* 802 F.2d 1472, 1477 (D.C. Cir. 1986); *Center to Prevent Handgun Violence v. U.S. Dep't of the Treasury*, 981 F. Supp. 20, 23 (D.D.C. 1997); *Crooker v. U.S. Secret Serv.*, 577 F. Supp. 1218, 1219 (D.D.C. 1983). When a FOIA plaintiff attempts to seek judicial review before the agency has had an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision, the complaint should be dismissed for failure to exhaust administrative remedies. *See e.g. Judicial Watch, Inc. v. Fed. Bureau of Investigation*, 190 F.Supp. 2d 29, 32 (D.D.C. 2002)(citing *Oglesby*, 920 F.2d at 61-62).

Further, FOIA confers jurisdiction upon the Court to provide relief to a plaintiff only where requested documents have been "improperly withheld" by an agency. 5 U.S.C. § 552(a)(4)(B). The courts have interpreted this section of the statute to mean that a plaintiff may

avoid dismissal only upon a showing by the plaintiff that the defendant (1) improperly (2)

withheld (3) agency records. *See Kissinger v. Reporters Committee for Freedom of the Press*,

445 U.S. 136, 150 (1980). Indeed, "[t]he plaintiff must show that the agency 'contravened all

three components of this obligation'" in order for the case to proceed. *Kuffel v. U.S. Bureau of

Prisons*, 882 F. Supp. 1116, 1120 (D.D.C. 1995) (*citin*g Kissinger, 445 U.S. at 151.) Absent

such a showing, a FOIA cause of action does not exist.

Exhaustion of such administrative remedies is required under FOIA before a party can

seek judicial review. *Dettmann v. United States Dep't of Justice*, 802 F.2d 1472, 1477 (D.C. Cir.

1986). A FOIA requester is deemed to have failed to exhaust administrative remedies whenever

the requester fails to comply with the administrative procedures set forth under FOIA, including:

(1) reasonably describing the records sought, *Gillin v. IRS*, 980 F.2d 819, 822-23 (1ˢᵗ Cir. 1992);

and (2) administratively appealing a denial of records, *Oglesby*, 920 F.2d at 57. *See also* 5

U.S.C. § 552(a)(3) (requester must follow agency's published regulations governing FOIA

requests); *Kessler v. United States*, 899 F. Supp. 644, 645 (D.D.C. 1995) (failure to follow

agency regulations constitutes failure to exhaust administrative remedies). Where a FOIA

plaintiff attempts to obtain judicial review without having first fully exhausted his administrative

remedies, his lawsuit is subject to dismissal for lack of subject matter jurisdiction. *Oglesby*, 920

F.2d at 57.

In this case, the Plaintiff alleges that the Defendant's "lack of response" was a

constructive denial, entitling Plaintiff to speedily file suit. Complaint ¶ 6. However, Plaintiff's

Complaint acknowledges on its face that the USMS did respond to Plaintiff's request, within five

days of receipt of the First Request, by notifying Plaintiff that the USMS had "commenced a

search for documents responsive to your request." *See* Complaint ¶ 5. If Plaintiff was
dissatisfied with the substance of Defendant's reply, Plaintiff was required to file an
administrative appeal of the USMS response to the Office of Information and Privacy, as
required by regulation. S*ee* 28 C.F.R. 16.9. This administrative appeal process is required under
*Ogelsby* and other pertinent case law. *See Judicial Watch v. Rossotti*, 326 F. 3d 1309, 1310
(D.C.Cir. 2003)(*citing Oglesby*, 920 F.2d at 64-65).

      Furthermore, the extra time and delay in processing Plaintiff's First Request and
providing Plaintiff with responsive documents is at least partly attributable to Plaintiff's own
error in submitting an invalid Seizure number and classifying his request as a request related to
"property seized." *See* Bordley Decl. ¶ 7. In this case, submitting an invalid Seizure number and
a request for information related to "property seized" arguably does not constitute a reasonable
description of the records Plaintiff was seeking. *See Gillin v. I.RS*, 980 F.2d at 822-23. Plaintiff
was not actually seeking assets or property, Plaintiff was seeking documents related to the
physical evidence, as well as the physical evidence itself, that was confiscated from him. *See*
Government Exhibit D. This is demonstrated by the fact that Plaintiff did not appeal the USMS'
reply to his First Request, and has essentially acknowledged his error regarding the Seizure
number he initially provided by submitting a Second Request that contained the correct Seizure
information. *Id.* Further, it was only clear to Defendant, from Plaintiff's Second Request, that
what Plaintiff was actually seeking was the *evidence* that was seized relating to his conviction
and not *assets or property*. *Id.* After the Plaintiff submitted the First Request, the USMS
conducted a search using Plaintiff's name, but found no information in its property and asset
database to indicate that any assets or property were seized from Plaintiff. *See* Government

Exhibit C; Bordely Decl. ¶ 7.   After Plaintiff submitted the Second Request that included

warrant information and an address, Defendant searched the databases specific to that type of

information.  Bordely Decl.  ¶¶ 12-14. This enabled the USMS to locate 91 responsive

documents.  *See* Government Exh. F.

Under these factual circumstances, a finding that Plaintiff had constructively exhausted

his administrative remedies for his First Request would unquestionably deny the USMS "a fair

opportunity to resolve prior to being ushered into litigation."  *Dettman v. U.S.*, 802 F.2d at1477.

This would thwart the whole statutory purpose of trying to resolve FOIA disputes at the

administrative level in the first instance, before resorting to the courts.  Plaintiff's Second

Request, which contained the correct warrant information and address where the Seizure

occurred, enabled Defendant to locate responsive records.  *See* Government Exhibits  D, F.  This

further demonstrates that Plaintiff filed suit prematurely.  Thus, Plaintiff's argument for

constructive exhaustion must fail.

## II.    The Defendant's Response Was Proper.

If the Court decides that Plaintiff did constructively exhaust his administrative remedies

for the First Request, this case would be resolved on summary judgment.  In moving for

summary judgment in a FOIA case, agencies must establish a proper basis for their withholding

of responsive documents.  "In response to this special aspect of summary judgment in the FOIA

context, agencies regularly submit affidavits . . . in support of their motions for summary

judgment against FOIA Plaintiffs."  *Judicial Watch v. U.S. Dept. of Health and Human Services,*

27 F. Supp. 2d 240, 242 (D.D.C. 1998).  These declarations or affidavits (singly or collectively)

13

are often referred to as a "*Vaughn* Index," after the case of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S. Ct. 1564 (1974).

The *Vaughn* Index serves a threefold purpose: (1) it identifies each document withheld; (2) it states the statutory exemption claimed; and (3) it explains how disclosure would damage the interests protected by the claimed exemption. *See Citizens Commission on Human Rights v. FDA*, 45 F.3d 1325, 1326 (9th Cir. 1995). "Of course the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA." *Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979).

There is no set formula for a *Vaughn* Index. "[I]t is well established that the critical elements of the *Vaughn* index lie in its function, and not in its form." *Kay v. FCC*, 976 F. Supp. 23, 35 (D.D.C. 1997). "The materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege." *Delaney, Midgail & Young, Chartered v. IRS*, 826 F.2d 124, 128 (D.C. Cir. 1987). *See also Keys v. U.S. Dept. of Justice*, 830 F.2d 337, 349 (D.C. Cir. 1987); *Hinton v. Dept. of Justice*, 844 F.2d 126, 129 (3d Cir. 1988).

### A.    Defendant Has Submitted Proper *Vaughn* Indices.

William Bordely is the Associate General Counsel, FOIA/PA Officer for the USMS. *See* Bordely Decl. at ¶1. As such, Mr. Bordely is familiar with the procedures followed by the USMS in responding to FOIA requests, and of the procedures followed with respect to the Plaintiff's request for access to records. *See* Bordely Decl. at ¶¶ 1-3. Mr. Bordely's declaration explains the

justification for the assertion of the exemptions claimed and is based upon his review of the

official files and records of USMS, on his experience with the procedures, and on the basis of

information acquired by him in the performance of his official duties. *Id*. at ¶ 1.  The declaration

provides a summary of USMS's processing of the First and Second FOIA requests and a

justification for the exemption cited to withhold information from disclosure.  As set forth above,

the declaration submitted in support of this motion meets the requirements of *Vaughn v. Rosen*,

484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564 (1974), and, together

with this memorandum, provides the Court with the requisite factual and legal basis to grant

Defendant's motion for summary judgment.

### B.    Defendant Has Performed Adequate Searches.

The USMS OGC, as requested by USMS, has performed an adequate search in response

to Plaintiff's direct FOIA requests.  In responding to a FOIA request, an agency is under a duty to

conduct a reasonable search for responsive records.  *Oglesby v. U.S. Dept. of Army*, 920 F.2d 57,

68 (D.C. Cir. 1990); *Cleary, Gottlieb, Steen & Hamilton v. Dept. of Health, et al.*, 844 F. Supp.

770, 776 (D.D.C. 1993); *Weisberg v. U.S. Dept. of Justice*, 705 F.2d 1344, 1352 (D.C. Cir.

1983).  This "reasonableness" standard focuses on the method of the search, not its results, so

that a search is not unreasonable simply because it fails to produce relevant material.  *Cleary* at

777 n.4.  Simply stated, the adequacy of  the search is "dependent upon the circumstances of the

case." *Truitt v. Dept. of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).  The fundamental question is

not "whether there might exist any other documents responsive to the request, but rather whether

the search for those documents was adequate."  *Steinberg v. Dept. of Justice*, 23 F.3d 548, 551

(D.C. Cir. 1994) (*quoting Weisberg v. Dept. of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

15

Thus, an agency is not required to search every record system, but need only search those systems in which it believes responsive records are likely to be located. *Oglesby*, 920 F.2d at 68.

Seized asset information is maintained in the Department of Justice ("DOJ") Consolidated Asset Tracking System ("CATS"), the automated database for seized and forfeited property. Bordely Decl. 5. Given the nature of the files requested, that is, criminal files relating to seized property in the Northern District of Georgia, it was appropriate and reasonable to use the name and property seizure number Plaintiff provided to search all records and records systems of the CATS database for files responsive to Plaintiff's First Request in the USMS Headquarters Asset Forfeiture Office ("AFO") and the USMS office in the Northern District of Georgia (Atlanta) ("Northern Georgia"). *See id.* at ¶¶ 4-7. The AFO and the Northern Georgia offices conducted a search of the CATS database under the Plaintiff's name and with the asset seizure number Plaintiff provided, but located no seized asset records pertaining to Plaintiff. The USMS OGC was advised by the AFO and the Northern Georgia that based on its review of the seizure number plaintiff provided, it was determined to be invalid. *Id.* ¶ 8. Consequently, the AFO and Northern Georgia were unable to find any seized asset or property records under the name or seizure number provided by Plaintiff. *Id.* However, two pages were copied from 28 CFR Part 0, Subpart T pertaining to the Plaintiff's request for records that describe the function of the USMS and released to the Plaintiff. *Id.*; Government Exhibit C. Thus, Defendant produced two responsive documents for Plaintiff's First Request, which Plaintiff did not administratively appeal.

Plaintiff's Second Request provided a search warrant case number and identified the specific address where the search and seizure occurred. Bordley Decl. ¶ 9; Government Exhibit

16

D. The difference between the First and Second Requests is that the First Request sought information related to seized assets or property, and the Second Request sought information related to seized evidence. *See* Government Exhibits A, D. The documents Plaintiff seeks in both his First and Second Requests are considered evidence, not assets or property, thus they are not located in the CATS database. Bordely Decl. ¶ 14.

In response to Plaintiff's Second Request, USMS conducted a search for records in the USMS office in Northern Georgia, and extended its search for records in the USMS office in the Western District of Missouri, since it was determined that Plaintiff was arrested in that judicial district. Bordley Decl. ¶ 11. The USMS systems of records routinely encompassed by a search for prisoner records are the Prisoner Processing and Population Management/Prisoner Tracking System (PPM/PTS), JUSTICE/USM-005, and the Warrant Information Network (WIN), JUSTICE/USM-007. *Id*. ¶ 12. Records maintained in these systems of records are compiled for law enforcement purposes in connection with the USMS's execution of Federal arrest warrants. *Id.* ¶¶ 12, 13. These databases do not contain the records of property or assets seized that are contained in the CATS database. *Id.* Instead, the WIN and PPM/PTS systems of records contain personal data, including criminal history records on the individual subjects of investigatory interest and their associates, witness interviews, and other records documenting efforts by the USMS to locate and apprehend individual fugitives and other wanted persons, and records of criminal custody by the USMSA. A search of these records located 91 responsive pages. *Id.* ¶ 14. Of these 91 pages, 90 pages were released to Plaintiff. *Id.* ¶ 16. While 56 pages were released in their entirety, 34 pages were released with deletions of names of government

employees, and names, addresses and/or telephone numbers of third-party individuals pursuant to

Title 5, United States Code, § 552 (b)(7)(C) (hereinafter Exemption 7(C)).  *Id.; see* Exhibit F.

### C.    Defendant Properly Applied Exemption 7(C).

Under Exemption 7(C), the FOIA does not apply to matters that are:

> (7)  records or information compiled for law enforcement purposes,
> but only to the extent that the production of such law enforcement
> records or information . . . (C) could reasonably be expected to
> constitute an unwarranted invasion of personal privacy. . . .

In this case, this exemption protects the identities of law enforcement officers who work

on criminal investigations.  *Davis v. U.S. Dept. of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992);

*Lesar v. U.S. Dept of Justice*, 636 F.2d 472, 487-488 (D.C. Cir. 1980).  Similarly, third-party

individuals who provide information to law enforcement authorities, like the law enforcement

personnel themselves, have protectable privacy interests in their anonymity.  *Computer Prof'ls

for Social Responsibility*, 72 F.3d at 904; *Farese v. U.S. Dept. of Justice*, 683 F. Supp. 273, 275

(D.D.C. 1987).  The fact that the requester might be able to ascertain the individuals' identities

through other means, or that their identities have been disclosed elsewhere, does not diminish

those individuals' privacy interests.  *Fitzgibbon v. CIA*, 911 F.2d 755 (D.C. Cir. 1990); *Weisberg

v. Dept. of Justice*, 745 F.2d 1476, 1491 (D.C. Cir. 1984).

Once a privacy interest has been established, as here, it must be balanced against the

public interest, if any, served by disclosure.  *Albuquerque Publ'g Co. v. Dept. of Justice*, 726 F.

Supp. 851, 855 (D.D.C. 1989).  The public interest in disclosure is limited to the FOIA's "core

purpose" of shedd[ing] light on an agency's performance of its statutory duties." *Reporters

Comm. for Freedom of the Press*, 489 U.S. at 773.  This standard is not easily satisfied when law

enforcement information pertaining to individuals is sought, for there "is no reasonably conceivable way in which the release of one individual's name . . . would allow citizens to know 'what their government is up to.'" *Fitzgibbon v. CIA*, 911 F.2d 755, 768 (D.C. Cir. 1990). *See also Albuquerque Publ'g Co.*, 726 F.Supp. at 855-56 (no public interest in disclosure of sensitive information DEA obtained about individuals and their activities, where such material would not shed light on DEA's conduct with respect to the investigation).

In order to overcome legitimate privacy interests, the requester must demonstrate not only the existence of a public interest, but also that the public interest is both significant and compelling. *Senate of Puerto Rico v. Dept. of Justice*, 823 F.2d 574, 588 (D.C. Cir. 1987); *Stone v. FBI*, 727 F. Supp. 662, 667-69 (D.D.C. 1990). Furthermore, concerning the information withheld in full and in part pursuant to exemption (7)(C) pertaining to third parties, the privacy rights of the third parties outweigh any public interest in disclosure. *See* DL Dec at ¶¶ 24-25. Plaintiff cannot show any public interest in the disclosure. *See National Archives and Records Admin. v. Favish*, 541 U.S. 157, 172-75 (2004).

USMS asserts exemption 7(C) to withhold from disclosure the identities of and personal information about third party individuals, where the release of this information could subject such persons to an unwarranted invasion of their personal privacy. Bordley Decl. at ¶ 19. All information at issue in this case was compiled for law enforcement purposes in order to assist in the investigation and prosecution of the Plaintiff. *Id*. ¶ 18. USMS submits that releasing this information could subject these individuals to unwarranted public attention, harassment, and annoyance, and would thereby impair the effectiveness of these employees in carrying out their official duties and potentially cause unwarranted attention to them in their private lives, and

could possibly pose a danger to their life or physical safety. *Id.* USMS determined that no legitimate interest would be served by disclosure of this information and that documents containing such references should be redacted to withhold the names, addresses, telephone numbers, and other personal information on third-party individuals. *Id.* ¶ 19.

After reviewing and evaluating these documents, USMS determined that no public interest existed in the release of the privacy-protected information contained in them. *Id.* ¶¶ 18-19. No public interest that USMS could identify would counterbalance the law enforcement interests and the third-party individuals' privacy interest in the information withheld under this exemption. *Id.* Moreover, no third party impacted had provided an authorization or consent to disclose the information. *Id.* USMS applied exemption 7(C) to all thirty-four (34) documents listed in the *Vaughn* Index. *Id.* at ¶ 26.

In interpreting exception 7(C), courts employ a balancing test weighing the privacy interests of the affected individuals against the public interest in disclosure of the information. *See, e.g., Oguaju v. United States*, 288 F.3d 448 (D.C. Cir. 2002). Courts are quick to point out, however, that the public interest in disclosure refers to "open[ing] agency action to the light of public scrutiny," *id.* at 450 (quoting *Reporter's Comm.*, 489 U.S. at 772), and "it does not include helping an individual obtain information for his personal use," *id.* (quoting *Mays v. DEA*, 234 F.3d 1324, 1327 (D.C. Cir. 2000)). *See also Mays v. DEA*, 234 F.2d 1324, 1327 (D.C. Cir. 2000). The *Oguaju* court bluntly rejected the requestor's argument that the public interest was served in releasing information that might aid him in his defense against criminal charges: "Oguaju's personal stake in using the requested records to attack his convictions *does not count* in the calculation of the public interest." 288 F.3d at 450 (emphasis added). On the other side of

the balance, privacy interests of individuals involved in criminal investigations are routinely and properly accorded weight by the courts. *See, e.g., Reporter's Committee* 489 U.S. at 762-71; *Oguaju* 288 F.3d at 451 (privacy interest of prison escapee); *Nation Magazine v. U.S. Customs Service*, 71 F.3d 885, 893, 895-896 (D.C. Cir. 1995).

Here, the Exemption 7 threshold issue is clearly met with respect to each of Plaintiff's FOIA and Privacy Act requests, simply on the basis of the nature of the material Plaintiff requested. Specifically, Plaintiff's First Request requested "documents relating to a seizure" pertaining to his criminal conviction for "production of child pornography, interstate transportation of child pornography, and reproduction of child pornography for interstate distribution." *See* Compl. ¶ 4. Plaintiff's Second Request was more detailed, and included requests for the photographs that were seized of one of his victims. *See* Government Exhibit D. One could conjecture from the fact that Plaintiff is a prisoner that he, like the requester in *Oguaju*, wants the information to attack his criminal conviction, but this simply "does not count" as a public interest. *Oguaju*, 288 F.3d at 450. On the other side of the balance, courts recognize the need to protect the privacy of individuals involved in criminal investigations, and Plaintiff's request is a sufficient invasion of privacy to weigh against disclosure. The USMS is unquestionably a law enforcement agency as well, and so the threshold issue for use of Exemption 7 is satisfied.

### D.    SEGREGABILITY

The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue *sua sponte*." *Trans-Pacific Policing Agreement v. United States Customs Service*, 177 F.3d 1022,

1028 (D.C. Cir. 1999).  The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions."  5 U.S.C. § 552(b); *Mead Data Cent., Inc. v. United States Dept. of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements."  *Mead Data*, 566 F.2d at 261.  The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed.  *Id.*  All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated. *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996).  Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content."  *Mead Data*, 566 F.2d at 261, n.55.

Here, as clearly expressed in Mr. Bordely's declaration, USMS evaluated each document, and each page contained in each document, for segregability. Bordely Decl. ¶ 22.  All information withheld was exempt from disclosure pursuant to a FOIA or Privacy Act exemption. *Id.*  Plaintiff was provided with all information which did not reveal information protected by statute and which, if disclosed, would not violate the personal privacy of third parties. *Id*.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed or, alternatively, summary judgment should be granted in favor of the Defendant.

Respectfully submitted,

_____Jeffrey A. Taylor_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____Rudolph Contreras_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

_/s/ Sherease Louis_____
SHEREASE LOUIS
Special Assistant United States Attorney
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530

Of Counsel:
William E. Bordley, Esq.,FOIA/PA Officer
Associate General Counsel
United States Marshals Service
Washington, D.C.

23

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **GARY SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case Number: 06-2197 (RWR)** |
| | ) | |
| **UNITED STATES MARSHALS SERVICE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that I caused service of the foregoing Defendant's Motion To Dismiss Or, In

The Alternative, For Summary Judgment, Supporting Memorandum, Statement of Material Facts,

Supporting Exhibits, Declaration of William Bordley, and Proposed Order, to be made by mailing

copies thereof, first class postage prepaid, addressed to:

GARY L. SMITH, Register No. 52962-019
USP Coleman II
U.S. Penitentiary
P.O. Box 1034
Coleman, FL 33521

on this 27th  day of July, 2007.

/s/Sherease Louis
SHEREASE LOUIS
Special Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.,
Washington, D.C. 20530
(202) 307-0895

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| GARY L. SMITH, )<br><br>Plaintiff, )<br><br>v. )<br><br>UNITED STATES MARSHALS SERVICE )<br><br>Defendant. ) | Civil Case No:  06JV02197 |

## DECLARATION

I, WILLIAM E. BORDLEY, being duly sworn upon my oath, hereby depose and say that:

1.  I am an Associate General Counsel and the Freedom of Information/Privacy Act (FOI/PA) Officer of the United States Marshals Service (USMS), assigned to the Headquarters, Office of General Counsel, in Arlington, Virginia.  I am experienced with the procedures for responding to requests made pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act (PA), 5 U.S.C. § 552a, for information maintained in the records and files of the USMS.  The USMS Headquarters Office of General Counsel is responsible for processing all FOI/PA requests made to any USMS office located throughout the United States pursuant to USMS policy.

2.  By letter dated September 29, 2006 (Request No. 2007USMS9963), received in the Office of General Counsel (OGC) on October 12, 2006, plaintiff submitted a request for a copy of the Code of Federal Regulations that define and govern the U.S. Marshals Service, and records pertaining to, and property seized, from him. (See Exhibit A.)

3. By letter dated October 17, 2006, the USMS OGC acknowledged receipt of plaintiff's request, advising him that a search for responsive documents had commenced, and the USMS would contact him when the processing of his request was completed. (See Exhibit B.)

4. The USMS conducted a search for seized property records pertaining to plaintiff, based on his identification of the USMS office in the Northern District of Georgia (Atlanta), as the judicial district where property was allegedly seized from him. The OGC extended its search to the Headquarter's Asset Forfeiture Office (AFO). Thus, the USMS searched in the locations that could reasonably be expected to contain seized property records pertaining to plaintiff.

5. Seized asset information is maintained in the Department of Justice (DOJ) Consolidated Asset Tracking System (CATS), the automated database for seized and forfeited property. The CATS database is a single integrated asset forfeiture information system for use by DOJ components and other federal agencies for law enforcement associated with civil and criminal forfeiture of assets. This database includes information identifying the asset location and identification number, name and address of owner and other parties having a lien or interest, names of seizing agencies, probable cause for seizure and the statutory basis for the action, disposal decision, and other information.

6. Information maintained in the CATS database is primarily retrieved by a CATS identification number, occasionally by a civil action case number, a property description or identification number, and in rare instances, under an individual's name.

7. Plaintiff's request only referenced his name and a seizure number. The OGC provided the USMS Headquarter's AFO and District of Northern Georgia with the plaintiff's name and seizure number and asked the district to conduct a search for records.

2

The AFO and Northern District of Georgia conducted a search of the CATS database under the plaintiff's name, but located no seized asset records pertaining to plaintiff. The OGC was advised by the AFO and Northern District of Georgia that based on its review of the seizure number plaintiff provided, it was determined to be invalid. Thus, the AFO and Northern District of Georgia were unable to find any records under the seizure number. Two pages were copied from 28 CFR Part 0, Subpart T pertaining to the plaintiff's request for records that describe the function of the USMS.

8. By letter dated November 20, 2006, the USMS responded to plaintiff's request, informing him that it was releasing a two (2) page public record which described the functions of the USMS (28 C.F.R. § 0.111, et seq.). By this letter, plaintiff was also notified that no records responsive to his request were located in the USMS AFO and the Northern District of Georgia office (N/GA). Plaintiff was informed that if he provided additional information, e.g., an asset description or a Consolidated Assets Tracking System (CATS) identification number, the USMS would conduct a new search for information. (See Exhibit C.)

9. By letter dated December 4, 2006 (Request No. 2007USMS10081), received in OGC on December 8, 2006, plaintiff submitted a new request for copies of documents concerning him, including the location and/or disposition of property seized, as it pertained to a search warrant, Case No. 2:02-MJ-026. Attached also to plaintiff's request was an Application and Affidavit for Search Warrant, Case No. 2:02-M-026, which identified the property location of 4417 Waterworks Road, Jackson County, Georgia. (See Exhibit D)

10. By letter dated December 15, 2006, the USMS OGC acknowledged receipt of plaintiff's request, advising him that a search for responsive documents had commenced,

and the USMS would contact him when the processing of his request was completed. (See Exhibit E)

      11. The USMS conducted a search for records in the USMS office in Northern Georgia, and extended its search for records in the USMS office in the Western District of Missouri since it was determined that plaintiff was arrested in that judicial district.

      12. The USMS systems of records routinely encompassed by a search for prisoner records are the Prisoner Processing and Population Management/Prisoner Tracking System (PPM/PTS), JUSTICE/USM-005, and the Warrant Information Network (WIN), JUSTICE/USM-007. Records maintained in these systems of records are compiled for law enforcement purposes in connection with the USMS's execution of Federal arrest warrants, investigation of fugitive matters, and receipt, processing, transportation, and custody of federal prisoners from the time of their arrest by a U.S. Marshal or their remand to a U.S. Marshal by the court until the prisoner is committed by the court to the Attorney General for service of sentence, otherwise released from custody or returned to custody of the U.S. Parole Commission or Bureau of Prisons. See Rule 4, Federal Rules of Criminal Procedure, 18 U.S.C. § 4086, 28 U.S.C. § 566(e)(1)(B), and 28 C.F.R. § 0.111(a), (j), (k), (q).

      13. Records maintained by the USMS in the WIN and PPM/PTS systems of records consist of personal data, including criminal history records on the individual subjects of investigatory interest and their associates, witness interviews, and other records documenting efforts by the USMS to locate and apprehend individual fugitives and other wanted persons, and records of criminal custody by the USMS. These systems of records are exempt from the access provision of the Privacy Act pursuant to 5 U.S.C. § 552a(j)(2). See 28 C.F.R § 16.101(a), (g), (q). Therefore, to ensure

4

maximum access, records in these systems of records are processed for disclosure

pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, which provides

access to federal agency records, unless such records (or portions thereof) are exempt

from disclosure under one or more exemptions of the FOIA. See 5 U.S.C. § 552(b).

14.  In this case, the WIN and PPM/PTS systems of records were searched by the

plaintiff's name and/or personal identifier, e.g., registration number or social security

number. Documents pertaining to plaintiff were located in these systems of records. As a

result of the search of the WIN and PPM/PTS systems of records, 91 pages of criminal

records indexed to plaintiff were located in the Northern District of Georgia and Western

District of Missouri.

15. In a further effort to locate seized property records pertaining to plaintiff, the

USMS OGC conducted another search of the USMS Headquarter's AFO. The OGC

provided the AFO with the location of 4417 Waterworks Road, Jackson County, Georgia,

where the property was allegedly seized as identified in the Application and Affidavit for

Search Warrant attached to plaintiff's second request. The AFO located no seized

property records based on that address.

16. By letter dated January 22, 2007, the USMS informed plaintiff that 91 pages

of documents were located which were responsive to his request. The USMS referred

one (1) page to the Federal Bureau of Prisons (BOP) for disclosure determination and

direct response to plaintiff. The USMS released 90 pages to plaintiff. 56 pages were

released in their entirety. 34 pages were released with deletions of names of government

employees, and names, addresses and/or telephone numbers of third-party individuals

pursuant to exemption 7(C). (See Exhibit F)

17. By letter dated February 5, 2007, plaintiff submitted an administrative appeal to the Department of Justice, Office of Information and Privacy (OIP). The USMS received a copy of OIP's letter to plaintiff dated May 14, 2007, affirming the USMS's action on plaintiff's request and advising plaintiff of his right to seek judicial review. (See Exhibits G and H).

18. Exemption 7(C) allows an agency to withhold records or information compiled for law enforcement purposes to the extent that production could reasonably be expected to constitute an unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(7)(C). This exemption was applied to withhold the names, telephone numbers, and other information pertaining to USMS and/or government employees (law enforcement officers). Plaintiff presents no public interest to warrant disclosing this information, nor does the USMS believe that public disclosure of this information is warranted. To the contrary, the release of the identity of law enforcement officers and other government employees could subject these individuals to unwarranted public attention, harassment, and annoyance, and would thereby impair the effectiveness of these employees in carrying out their official duties and potentially cause unwarranted attention to them in their private lives, and could possibly pose a danger to their life or physical safety. Absent a legitimate public interest, disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy. In considering whether the public's interest in disclosure outweighed the individual's interest in privacy, the USMS determined that no legitimate interest would be served by disclosure of this information. 5 U.S.C. § 552 (b)(7)(C).

19. Exemption 7(C) was applied also to withhold the names, addresses, telephone numbers, and other personal information on third-party individuals. Plaintiff has

presented no public interest to warrant disclosing this information. Release of this

information could expose these individuals to unnecessary public attention, criticism,

harassment and embarrassment.  In considering whether the public's interest in disclosure

outweighed the individuals' interest in privacy, the USMS determined that no legitimate

interest would be served by disclosure of this information.

   20.  A description of each of the 34 pages released to plaintiff with excisions

made to certain documents pursuant to 5 U.S.C. (B)(7)(C) is provided as follows:

**USMS Documents Processed for Disclosure with Information Deleted and Withheld**

| Document Item | Document Identification | Number of Pages |
|---|---|---|
| Item 1 | Prisoner Tracking System dated 11/12/03, 5/3/02, 5/8/02, 12/15/06, 12/20/06 7(C) – name and/or telephone number of USMS employee and/or third-party individuals | 6 |
| Item 2 | Federal Prisoner Property Receipt 7(C) – name of USMS employee | 1 |
| Item 3 | U.S. Marshals Service Detainee Medical Request 7(C) – name of USMS employee | 1 |
| Item 4 | Inmate Grievance Form dated 3/30/03, 3/31/03 7(C) – name of third-party individuals | 4 |
| Item 5 | Inmate Request Form dated 4/1/03 7(C) – name of third-party individuals | 1 |
| Item 6 | Detainee Medical Request dated 4/1/03, 5/16/02 7(C) – name of third-party individuals | 2 |
| Item 7 | Medical Summary of Federal Prisoner 7(C) – name of third-party individuals | 1 |
| Item 8 | Handwritten letters dated 9/21/03, 5/31/03, 8/21/03 7(C) – name of third-party individuals | 10 |
| Item 9 | Fax coversheet dated 8/15/03, 815/03 7(C) – name of USMS employee and/or third-party individuals | 2 |

| Item 10 | Authorization to Release Information | |
| | 7(C) – name of USMS employee | 1 |
| Item 11 | Prisoner Medical Records Release Form | |
| | 7(C) – name of USMS employee | 1 |
| Item 12 | Personal History of Defendant form | |
| | 7(C) – name of third-party individuals | 2 |
| Item 13 | FBI Criminal Justice Information Services Division | |
| | 7(C) – name of third-party individuals | 2 |

21.  In summary under plaintiff's two requests, Request Nos. 2007USMS9963 and 10081, 58 pages of documents located by the USMS pertaining to plaintiff's request were released to plaintiff in their entirety. 34 pages were released to the plaintiff with excisions made pursuant to exemption 7(C), as described above. One (1) document was referred to BOP for disclosure determination and direct response to plaintiff.  In preparation for this declaration, the USMS has since learned that the BOP made a partial release of the document.

22.  No documents were withheld from disclosure in entirety and all non-exempt portions of documents were segregated and disclosed to plaintiff.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my information and belief.

WILLIAM E. BORDLEY
ASSOCIATE GENERAL COUNSEL/FOIPA OFFICER

Dated:  July 11, 2007

8

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**GARY SMITH,**                         )
                                        )
              **Plaintiff,**        )
**v.**                                  )     **Case Number: 06-2197 (RWR)**
                                        )
**UNITED STATES MARSHALS SERVICE,**     )
                                        )
              **Defendant.**        )

## DEFENDANT'S STATEMENT OF MATERIAL
## FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

Pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 7(h), Defendant respectfully submits the following statement of material fact as to which there is no genuine issue:

1.      By letter dated September 29, 2006, Plaintiff filed a request under the FOIA and the Privacy Act for copies of "the regulations that define and govern the U.S. Marshals Services" and "any information related to myself and property seized that belonged to me . . . from Judicial District: Northern Georgia (Atlanta) . . .  Seizure Number 305A-BA-80998-E6522-KC (Northern Georgia- Atlanta.)." *See* Government Exhibit A.  This request was received by the USMS on October 12, 2006. *See* Declaration of William Bordley ¶ 2 ("Bordley Decl.").  The USMS identified this request as Request No. 2007USMS9963.  *Id.; see* Government Exhibit A.

2.      By letter dated October 17, 2006, the USMS OGC acknowledged receipt of Plaintiff's request, and advised Plaintiff that the USMS had "commenced a search for documents responsive to your request." Bordley Decl.¶ 3.  The letter further advised the Plaintiff that the USMS would contact Plaintiff when the processing of the request was completed.  *Id*.; see Government Exhibit B.

3.      The USMS conducted a search for seized property records pertaining to Plaintiff, based on Plaintiff's identification of the USMS office in the Northern District of Georgia, Atlanta Division, as the judicial district where Plaintiff's property was allegedly seized.  Bordley Decl. ¶ 7.  4.  No seized asset records were located under the seizure number provided by Plaintiff.  *Id.* ¶ 8.

4.      By letter dated November 20, 2006, the USMS responded to Plaintiff's request, informing him that it was releasing a two (2) page public record which described the functions of the USMS (28 C.F.R. ' 0.111, et seq.).  By this letter, Plaintiff was also notified that no records responsive to his request were located in the USMS AFO and the Northern District of Georgia office (N/GA).  Plaintiff was informed that if he provided additional information, such as an asset description or a CATS identification number, the USMS would conduct a new search for information. *See* Government Exhibit C.

5.      On November 20, 2006, Plaintiff mailed the Complaint for filing, alleging essentially that he had constructively exhausted his claims.  The Complaint was filed on December 26, 2006, and seeks to compel the Defendant to fulfill the Plaintiff's FOIA/PA request within ten days of the Court's Order, and requests that the Defendant bear all costs and fees.

6.      Plaintiff did not bring an administrative appeal of USMS's response to FOIA/Privacy Act Request No. 2007USMS9963 prior to filing suit. Bordley Decl. ¶ 9.

7.      By letter dated December 4, 2006, received in OGC on December 8, 2006, Plaintiff submitted a new request for specific copies of documents pertaining to a search warrant for case Criminal Case No. 2:02-MJ-026, including, *inter alia*, "copies of the photographs" of one of his young victims.  *See* Government Exhibit D. Attached also to Plaintiff's request was an

2

Application and Affidavit for Search Warrant, Case No. 2:02-M-026, which identified a specific property location of 4417 Waterworks Road, Jackson County, Georgia. This request was assigned Request No. 2007USMS10081. *Id.*

8.     By letter dated December 15, 2006, the USMS OGC acknowledged receipt of Plaintiff's request. The letter advised Plaintiff that a search for responsive documents had commenced, and the USMS would contact him when the processing of his request was completed. *See* Government Exhibit E.

9.     By letter dated January 22, 2007, the USMS informed plaintiff that 91 pages of documents were located which were responsive to his request. The USMS referred one (1) page to the Federal Bureau of Prisons (BOP) for disclosure determination and direct response to Plaintiff. The USMS released 90 pages to Plaintiff. Of the 90 pages, 56 pages were released in their entirety, and 34 pages were released with deletions of names of government employees, and names, addresses and/or telephone numbers of third-party individuals pursuant to exemption 7(C). *See* Exhibit F.

10.    By letter dated February 5, 2007, Plaintiff submitted an administrative appeal to the Department of Justice, Office of Information and Privacy (OIP).  The USMS received a copy of OIP's letter to Plaintiff dated May 14, 2007, affirming the USMS's action on Plaintiff's request, and advising Plaintiff of his right to seek judicial review.  *See* Exhibits G and H.

Respectfully  submitted,

_____Jeffrey A. Taylor_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____Rudolph Contreras_____
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

_____s/Sherease Louis_____
SHEREASE LOUIS
Special Assistant United States Attorney
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530

Of Counsel:
William E. Bordley, Esq.
Associate General Counsel
FOIA/PA Officer
United States Marshals Service
Washington, D.C.

4

29 Sept-06

REC'D
GENERAL
06 OCT 12   12:43
U.S. MARSHAL

page 1 of 2

Office of General Counsel
United States Marshals Service
Department of Justice
Washington DC 20530-1000



Re: FOIA/PA Request

CERTIFIED MAIL: _____ 7006 0810 0002 1918 8423

Dear Sirs:

Pursuant to Title 5 U.S.C. § 552, the Freedom of Information Act, and Title 5 U.S.C. § 552a, the Privacy Act, I am requesting disclosure and copies of the following information. I declare under the penalty of perjury of the laws of the United States that: I am Gary L. Smith, born on July 20, 1966 in Bethlehem, Pennsylvania; I am a Citizen of Florida and my Social Security Number is _____. I make this declaration in lieu of my notarized signature, pursuant to Title 28 U.S.C. § 1746.

I am requesting disclosure of the following:
- Code of Federal Regulations that define and govern the U.S. Marshal Service; and

- Any information relating to myself and property seized that belongs to me.
    - Judicial District: Northern Georgia (Atlanta)
    - Seizure Number: 305A-BA-7098-26522-KC (Northern Georgia - Atlanta)

US Marshals - FOIA                                    page 2 of 2
09-Sept-06

Pursuant to Title 5 U.S.C. § 552(b), I am requesting full disclosure
and that any part that cannot be disclosed, I am requesting
any reasonable, segregable portions be provided after redaction
of exempt portions. Any redactions shall be indicated on the
released portions and the amount of information redacted shall be
indicated at the place where redaction has occurred.

You may respond to me at: Gary L. Smith #51753-019
                          P.O. Box 150160
                          Atlanta, Georgia 30315

Pursuant to Title 5 U.S.C. § 552(a)(6)(A)(i), I am expecting
a reply within twenty (20) days, excluding Saturdays, Sundays
and legal public holidays, upon receipt of this request.

Sincerely,


Gary L. Smith



cc: file



**U.S. Department of Justice**

United States Marshals Service

*Office of General Counsel*

---

*Washington, DC 20530-1000*

OCT 17 2006



Gary L. Smith
Reg. No. 52962-019
P.O. Box 150160
Atlanta, GA. 30315

**Re: <u>Freedom of Information Act (FOIA) Request No. 2007USMS9963</u>**

Dear Mr. Smith:

The United States Marshals Service is in receipt of your Freedom of Information Act request for seized property records maintained by this Bureau. We have commenced a search for documents responsive to your request and will contact you when our processing is complete.

Although we are unable to determine at this time the amount of fees to be charged to you, if any, the filing of your request constitutes your agreement to pay all applicable fees that may be charged under 28 C.F.R. § 16.11 or § 16.49, up to $25.00. You will be notified as soon as practicable if the estimated or actual fee for satisfying your request exceeds $25.00.

If you have any questions concerning your request, please contact Kevin King at the address indicated above or call (202) 307-9054.

Sincerely,

William E. Bordley
Associate General Counsel/FOIPA Officer
Office of General Counsel



**U.S. Department of Justice**

United States Marshals Service

*Office of General Counsel*

---

*Washington, DC 20530-1000*

NOV 2 0 2006



Gary L. Smith
Reg. No. 52962-019
P.O. Box 150160
Atlanta, GA. 30315

      Re:  <u>Freedom of Information Act (FOIA) Request No. 2007USMS9963</u>
      Subject of Request: <u>Self; seized property</u>

Dear Mr. Smith:

      The United States Marshals Service (USMS) is responding to your request for information pertaining to the above subject matter.

      Pursuant to your request, the USMS is releasing to you a two page public record which describes the functions of the USMS (28 C.F.R. § 0.111 et. seq.).  This two page document is enclosed.  The USMS Asset Forfeiture Office and the Northern District office of Georgia (N/GA) conducted a search of its files, but no information responsive to the remainder of your request was located.  If you are able to provide us with additional information, <u>e.g.</u>, an asset description or a Consolidated Assets Tracking System (CATS) identification number, we can conduct a new search for information.

      If you are dissatisfied with my action on this request, you may submit an appeal within 60 days of the date of this letter by writing to the Director, Office of Information and Privacy, United States Department of Justice, Flag Building, Room 570, Washington, D.C. 20530.  Both the letter and the envelope should be clearly marked "Freedom of Information/Privacy Act Appeal."  In the event you are dissatisfied with the results of any such appeal, judicial review will thereafter be available to you in the United States District Court for the judicial district in which you reside or have your principal place of business, or in the District of Columbia.

                 Sincerely,

                 William E. Bordley
                 Associate General Counsel/FOIPA Officer
                 Office of General Counsel

Enclosures

4 - Dec - 06



GOVERNMENT
EXHIBIT
D

page 1 of 2

Office of General Counsel
United States Marshals Service
Department of Justice
Washington, DC 20530-1000

certified mail
7003 1680 0005 1199 9223

RE: Freedom of Information / Privacy Act Request

Dear Sirs:
    Pursuant to Title 5 U.S.C. § 552, the Freedom of Information Act, and Title 5 U.S.C. § 552a, the Privacy Act, I am requesting disclosure and copies of the following:
- The documents (or the like), pursuant to Search Warrant 2:02-MJ-026 (N.D. of Georgia) [see Attached "A"]:

1) Copy of the forensic examination of my computers, refered to in paragraph #16;

2) Copies of the photographs described in paragraph #17;

3) Copies of the investigation (notes, documents, memorandum, etc.) that "positive identification of a young girl and determined that she is fourteen (14) years of age and lives in Carnsville, Georgia", as refered to in paragraph #17

4) Copy of the Georgia Bureau of Investigation's "tip", refered to in paragraph #18;

5) Copy of the report made to the National Center for Missing and Exploited Children, as refered to in paragraph #19;

6) Copies of any additional investigations of myself, as refered in paragraph #20; and

7) The location and/or disposition of property seized.

The information sought is discoverable under Habeas Corpus proceedings (refer

US Marshals / FOIA·PA                                            page 2 of 2
4-Dec-06

to 06-3507 C.A. 8 (mo)), under the rules of discovery because of my need to
demostrate my illegal confinement greatly outweighs any governmental interest
of non-disclosure. See <u>Rice v Black</u>, 112 FRD 620.

    In accordance with Title 5 U.S.C. § 552 (a)(6)(E)(i), I am requesting an
expedited processing of this request because if these records are delayed, I will
suffer a substantial loss of due process. I expect a reply within ten (10)
calendar days after the date of receipt of this request.

        You may reply to me at:  Gary L. Smith # 52962-019
                                  P.O. Box 150160
                                  Atlanta, Georgia  30315

    I declare under the penalty of perjury of the laws of the United States
of America that I am Gary L Smith, a Citizen of Florida, born on July 20, 1966, in
Bethlehem, Pennsylvania. My Social Security number is 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. I make this
declaration in lieu of my notarized signature, pursuant to Title 28 U.S.C. § 1746.

    I certify that all of the foregoing is true and correct, under penalty of perjury
under the laws of the United States of America.

Executed on: 4-Dec-06        by: _____
                                  Gary L Smith

cc: File

Attachment "A"

AO 106 (Rev. 2/85) Affidavit for Search Warrant

# United States District Court

## NORTHERN DISTRICT OF GEORGIA

In the Matter of the Search of

4417 Waterworks Road, Jefferson, Jackson
County, Georgia, and all vehicles located within
the curtilage thereof.

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

CASE NUMBER: 2:02-M-026

I, Cameron Roe, being duly sworn depose and say:

I am a Special Deputy U.S. Marshal, and have reason to believe that on the property or premises known as 4417 Waterworks Road, Jefferson, Jackson County, in the Northern District of Georgia, there is now concealed certain property, namely that property which is described in more detail in Attachment A, which is both evidence of and the proceeds from violations of Title 18 United States Code, Sections 2251 and 2252.

The facts to support a finding of Probable Cause are set forth completely in the attached statement and affidavit, which is incorporated herein by reference.

Signature of Affiant
Cameron Roe

Sworn to before me, and subscribed in my presence

April 18, 2002
Date

at Gainesville, Georgia
City and State

Susan S. Cole
United States Magistrate Judge
Name and Title of Judicial Officer
AUSA JEFFREY H. BRICKMAN

Signature of Judicial Officer

000484

### AFFIDAVIT

I, Cameron D. Roe, being duly sworn, depose and state the following.

1.    I am a sworn law enforcement officer in Roswell Georgia and  have been sworn as a Special Deputy of the United States Marshal Service.  I am currently assigned to the Federal Bureau of Investigation  Innocent  Images  Task  Force,  which  has  the responsibility, in part, of investigating crimes against children, including the sexual exploitation of children.  I have received training from the FBI and the Department of Justice in the area of child pornography, pedophile behavior, and child molesters.  I have been  involved  in  seizures  and  investigations  relating  to  the illegal distribution of child pornography.  I have participated in the execution of search warrants, and seized evidence which relates to violations of child pornography/child exploitation statutes.  I have participated in investigations in which a computer was used to commit violations involving the sexual exploitation of children, including the following: Title 18, United State Code, Sections 2251 et seq. (production, receipt, distribution, possession, trafficking of child pornography), Section 1470 (sending of obscene material to a minor), Section 2421 (interstate transportation of an individual for  illegal  sexual  activity),  Section  2422  (the  inducement and enticement of a minor to travel in interstate commerce to engage in illegal  sexual  activity  with  a  person  or  the  inducement  and enticement of a minor by use of an interstate facility to engage in

illegal sexual activity with a person) and Section 2423 (the interstate transportation of a minor by an adult for the purpose of engaging in illegal sexual activity). I learned the information set forth below by personal investigation from law enforcement agents.

2.   This affidavit is made based upon my belief that there is probable cause to believe that GARY LEE SMITH (hereinafter "SMITH," who resides at 4417 WATERWORKS ROAD, JEFFERSON, GEORGIA, 30539, has committed a violation of Title 18, United States Code, Section 2251.

3.   As a Special Deputy Marshal,   I am authorized to investigate violations of 18 U.S.C. § 2422(b) which provides that it is a federal offense for any person to use any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, to knowingly persuade, induce, entice, or coerce any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or to attempt to do so.

4.   This Affidavit is made in support of a search warrant for the items described in Attachment A, in the possession of GARY LEE SMITH, seeking evidence of violations of Title 18, United States Code, Section 2252A, which prohibits the shipping of child pornography in interstate commerce, and Section 2251, which

2

prohibits the production of child pornography and states in pertinent part:

(a)   Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . ., or who transports any minor in interstate . . . commerce, . . . with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (d), if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

5.   Title 18, United States Code, Section 2256(2) defines "sexually explicit conduct as "actual or simulated"-

    (a) Sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

    (b)   Bestiality;

    (c)   Masturbation;

    (d)   Sadistic or masochistic abuse; or

    (e)   Lascivious exhibition of genitals or pubic area of

3

any person.

## USE OF COMPUTERS IN CHILD EXPLOITATION CRIMES

6.    I know the following based on personal experience and that of other law enforcement agents who investigate offenses involving child pornography and the sexual exploitation of children:

7.    A pedophile is a person who has a sexual preference for children. A "preferential child molester" is a pedophile who is sexually attracted to and prefers to have sex with minor children and acts on that attraction by actually molesting children, often at a high frequency rate.  Preferential child molesters typically have effective methods of "seducing" minors to have sex with the molester, including having the ability to develop a good rapport with minors, and with the technology and popularity of computers, often use computers to contact and locate their victims.

8.    The "INTERNET" is a world wide computer network which connects computers and allows communications and the transfer of data and information across state, national and foreign boundaries. Today, the Internet connects over 130,000 other networks in over 100 countries containing nearly 20 million host computers.

9.    A device known as a modem allows any computer to connect to another computer through the use of telephone lines.   By connecting to a host computer, electronic contact can be made to

4

literally millions of computers around the world. A host computer
is one that is attached to a network and serves many users. These
host computers are sometimes operated by commercial services, which
allow subscribers to dial a local number and connect to a network,
which is in turn connected to their host systems. These commercial
service providers allow electronic mail service between their own
subscribers and usually also between their own subscribers and
those of other networks. In addition, these service providers act
as a gateway for their subscribers to the Internet; hence they are
commonly described as Internet Service Providers (ISPs).

10. Individuals who utilize the Internet commonly communicate
with each other by using either electronic mail (hereinafter
referred to as "Email") or by conversing with others in "real time"
using services provided by their ISP.

a. Some commercial ISPs allow their customers the option of
communicating either publically with each other in "real time"
inside "chat rooms" where conversations are viewed by everyone who
happens to be in that chat room/channel at that time, or privately,
by creating private chat rooms, or more commonly, in the form of
sending person to person "instant messages."

b. Email is an electronic form of communication provided by
many ISPs which can contain letter type correspondence and graphic
(picture or movie) images. Email is similar to conventional paper
type mail in that it is addressed from one individual to another,

5

is often private and usually contains a message header which gives information about the individual who originated the particular message or graphic image. Frequently, a return address is included for the recipient to use in responding to the Email message.

10. Computers and computer technology, particularly the use of the Internet, have also revolutionized the way in which preferential child molesters are able to interact with their victims. The computer makes it easier for the molester to store, organize and retrieve the names, screen names and addresses of children, any correspondence with a child, and to easily record characteristics of the child, as well as sexual acts that the molester has engaged in or discussed with that child. The use of computer real time messaging, in chat rooms or by private instant messaging, has made it far easier for the preferential child molester to sexually interact with a minor and allows the molester to control the anonymity of the contact.

11. As a result of the widespread Internet technology available to consumers, a preferential child molester now has access to literally millions of other computer users -- many of them minors. From my training, I have learned that preferential child molesters are often very skilled at identifying vulnerable victims, are able to identify and befriend children, and have sophisticated methods of "seducing" children and becoming a part of the child's life by listening to and paying special attention to

6

the child.  The computer allows the child molester to communicate with minors privately at any hour of the day or night, with the knowledge that, after gaining the child's trust, the child will likely not report contacts with the molester to parents or other caretakers and that communications can be easily erased/deleted by the child upon instruction by the molester. Also, a molester knows that if any contacts between molester and child should become known by the child's guardian or care giver, it would be difficult for the molester to be easily identified due to the anonymous nature of the contact via computer.

12.  By use of the Internet, a preferential child molester can seek out or "troll" for minors with relative ease in privacy and with little risk of being identified.  Such "trolling" for children is frequently conducted by the preferential child molester by searching chat rooms frequented by minors and by searching "profiles" set up by users on some ISPs, in which information -- including the age, sex and hobbies of the user -- is available. Contact can then be initiated by the molester by sending text messages, via Email or instant messaging.  As discussed above, a preferential child molester may  send child pornography images to the child in an effort to begin to desensitize the minor to viewing children engaged in explicit sexual activity, and the molester may also use adult pornography for the same purpose -- often including sexually explicit images of himself/herself.

7

## THE INVESTIGATION

13. In the paragraphs that follow, your affiant provides specific information as to the activity of the subject, GARY L. SMITH who resides at 4417 WATERWORKS ROAD JEFFERSON, GEORGIA 30539.

14. On March 28, 2002, a grand jury sitting in the Southwestern District of Missouri indicted GARY LEE SMITH for violations of Title 18, United States Code sections 2251(a), 2252 (a)(1), and 2252(a)(2). A warrant for SMITH'S arrest was also issued. A copy of the indictment is attached hereto.

15. The investigation revealed that Chicago FBI has also been investigating SMITH since November 2001. FBI Chicago's investigation revealed that SMITH was previously convicted in Sebastian County, Arkansas, on February 17, 1998, for the offense of First Degree Sexual Abuse, and as a result, is a registered sex offender in the State of Illinois and the State of Georgia. According to agents in Chicago, SMITH has a personal web site called Photostudio17.com. that displays photographs of females between the ages of 14-18. The investigation further revealed that someone can access the website by paying a fee by credit card, thus allowing them to view hundreds of photographs of females in acts of erotica. The website also advertises the sale of compact disks containing photographs of these "models."

16. On October 27, 2001, a judge sitting in the 4th District Court, Cook County, Illinois, authorized a federal search warrant

8

to be executed at the defendant's residence, located at 2919 West Balmoral, Chicago, Illinois, resulting in the seizure of twelve (12) computers. A subsequent forensic examination of the computers revealed several images of child erotica and child pornography. The examination also revealed that SMITH maintained cataloged files of all of his models, including their biographical information.

17. Some of the images described above were titled "adrianne14" and depicted what appeared to be photographs of a fully clothed young girl. However, additional photographs in this same series depicted the same young girl, naked and engaged in acts of self masturbation. FBI subsequently made a positive identification of the young girl and determined that she is fourteen (14) years of age and lives in Carnesville, Georgia. Agents also located a series of images of "Adrianne" on SMITH'S website, described in paragraph 15, above.

18. On December 11, 2001, the Georgia Bureau of Investigations (GBI) reported that it had received a tip that SMITH, a registered sex offender, runs a website called Photostudio17.com. According to the GBI, SMITH solicits photographs of girls to upload to the website.

19. On February 18, 2002, a reporting party contacted the National Center for Missing and Exploited Children and reported that SMITH has a "golden collection" which the reporting party has not seen. According to the reporting party, SMITH advised that he

had to remove images from the compact disks he sells on his website because they could get him in trouble.

20. As a result of the investigation, the FBI continues to identify additional victims. In addition, the investigation reveals that as recently as April 17, 2002, one of SMITH'S websites is still active and that numerous images of child erotica are stored on his web site Photostudio17.com.

21. Agents subsequently determined that SMITH resided at 4417 WATERWORKS ROAD, JEFFERSON, GEORGIA, and has lived there since late 2001 or early 2002. On that same date, agents of the Jackson County Sheriff's Office, Jackson, Georgia, executed the Western District of Missouri's arrest warrant on the defendant at his residence. Upon entering the residence, law enforcement observed SMITH using a personal computer which depicted an image of a young girl, between the ages of 14-17, dressed in a t-shirt. The Deputies also noted that there was a "Palm" desk assistant next to the computer.

22. The landlord for the listed residence has confirmed that SMITH resides at the residence. Moreover, a computerized motor vehicle registration of a car parked outside of the residence was registered to SMITH, at 4417 Waterworks Road, Jefferson, Georgia. 30539.

23. Based on the aforementioned facts and circumstances, your affiant believes that there is probable cause to believe that

10

SMITH'S residence, located at 4417 Waterworks Road, Jefferson, Georgia, 30539, is being used to store evidence of violations of federal law. Your affiant hereby requests that a search and seizure warrant be issued at that address.

24. This affidavit does not contain everything that I know about this investigation or all information obtained during the course of the investigation.

11

**Attachment A**

**Description of Items to be Searched**

a.    Records evidencing use or ownership of the computers and equipment described above, including, but not limited to, registry and setup information within the computer's operating system and customization to the operating system's directory structure.

b.    Graphic files (including, but not limited to files bearing graphic interchange format extensions, .JPG, .GIF, .TIF, .AVI, and .MPG), and the data within the aforesaid objects relating to said materials, which maybe, or are, used to: visually depict child pornography or child erotica.

c.    Computer programs capable of viewing graphic files.

d.    Text files containing information pertaining to the interest in child pornography or sexual activity with children and/or pertaining to the production, trafficking in, or possession of child pornography.

e.    Correspondence, including, but not limited to, electronic mail, chat logs, and electronic messages, pertaining to the trafficking in, production of, distribution of, or possession of child pornography.

f.    Correspondence including, but not limited to electronic mail, chat logs, electronic messages, pertaining to travel in interstate or foreign commerce for the purpose of engaging in any sexual activity with a minor.

12

g.   Correspondence including, but not limited to electronic mail, chat logs, electronic messages, soliciting minors to engage in sexually explicit conduct for the purposes of producing child pornography.

h.  Names, addresses, and other identifiers of minors visually depicted in child erotica or child pornography.



**U.S. Department of Justice**

United States Marshals Service

*Office of General Counsel*



*Washington, DC 20530-1000*

December 15, 2006

Gary L. Smith
52962-019
PO Box 150160
Atlanta, GA  30315

RE:    Freedom of Information/Privacy Act Request No. 2007USMS10081
Subject:  Self

Dear Requester:

The United States Marshals Service is in receipt of your Freedom of Information/Privacy Act request for records maintained by this Bureau.  We have commenced a search for documents responsive to your request and will contact you when our processing is complete.

Although we are unable to determine at this time the amount of fees to be charged to you, if any, the filing of your request constitutes your agreement to pay all applicable fees that may be charged under 28 C.F.R. § 16.11 or § 16.49, up to $25.00.  You will be notified as soon as practicable if the estimated or actual fee for satisfying your request exceeds $25.00.

If you should have any questions, please contact us at (202) 307-9054.

Sincerely,

William E. Bordley
Associate General Counsel/FOIPA Officer
Office of General Counsel



**U.S. Department of Justice**

United States Marshals Service

*Office of General Counsel*

---

*Washington, DC 20530-1000*

January 22, 2007



Mr. Gary L. Smith
Reg. No. 52962-019
P.O. Box 150160
Atlanta, Georgia  30315

      RE:    Freedom of Information Act Request No. 2007USMS10081

Dear Mr. Smith:

      The United States Marshals Service (USMS) is responding to your request for documents pertaining to you.

      At the outset, be advised that 18 U.S.C. § 41, is the authority that permits the USMS to obtain search warrants.

      Pursuant to your request, the USMS conducted a search of its files and located 91 pages of documents indexed to your name.  One page originated with the Federal Bureau of Prisons (BOP).  This page and a copy of your request have been referred to the BOP for disclosure determination and direct response to you in accordance with 28 C.F.R. § 16.4 and/or § 16.42.

      We have determined to grant you access to the remaining 90 pages, except for the names of government employees and names and/or telephone numbers of third-party individuals and other prisoners referenced therein, which are exempt from disclosure pursuant to exemption 7(C) of the Freedom of Information Act, 5 U.S.C. 552(b).  Exemption 7(C) allows an agency to withhold records or information compiled for law enforcement purposes, to the extent that disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy.  Information withheld is not appropriate for discretionary release.  A copy of these 90 pages of documents are enclosed.  The USMS located no additional documents responsive to your request.

If you are dissatisfied with my action on this request, you may appeal this partial denial within 60 days of the date of this letter by writing to the Director, Office of Information and Privacy, United States Department of Justice, Flag Building, Suite 570, Washington, D.C. 20530. Both the letter and the envelope should be clearly marked "Freedom of Information/Privacy Act Appeal." In the event you are dissatisfied with the results of any such appeal, judicial review will thereafter be available to you in the United States District Court for the judicial district in which you reside or have your principal place of business, or in the District of Columbia.

Sincerely,

William E. Bordley
Associate General Counsel/FOIPA Officer
Office of General Counsel

Enclosures

3/2/07

PA
Ⓐ
USMS

OFFICE OF INFORMATION
AND PRIVACY

07-0821

page 1 of 2

MAR 0 2 20

RECEIVED

5- Feb-07

Office of Information and Privacy
U.S. Department of Justice
Flag Building, Suite 570
Washington, DC 20530

certified mail
7006 2760 0001 6725 1774

GOVERNMENT
EXHIBIT
G

RE: FOIA/PA Appeal of <u>2007USMS16081</u>

Dear Sirs:
    Pursuant to Title 5 U.S.C. § 552, and Title 5 U.S.C. § 552a,
I am appealing the decision to redact records, wrong information
and unfulfilled items on my FOIA/PA request to the U.S. Marshals

    Specifically:
    • Exemptions were processed under § 552. The Privacy
      Act (§ 552a) should have been applied first,

    • There is no Title 18 USC § 41, as applied to the
      U.S. Marshals

    • I've requested items from Special Deputy US Marshal
      Cameron Roe and his search warrant. None of
      this information has been provided (see enclosed),

    In accordance with Title 5 U.S.C. § 552(a)(6)(A)(i),
I am expecting a reply within twenty (20) days upon
receipt of this request (exempting Saturdays, Sundays and

US DOJ — FOIA/PA Appeal                                    page 2 of 2
5-Feb-07

legal public holidays).

    You may reply to me at;   Gary L Smith  app.
                                          52962-019
                                          PO Box 150160
                                          Atlanta, Georgia  30315

Sincerely

Gary L Smith

Cc: File



**U.S. Department of Justice**

Office of Information and Privacy

Telephone: (202) 514-3642          *Washington, D.C. 20530*



MAY 1 4 2007

Mr. Gary Smith
Register No. 52962-019
United States Penitentiary          Re:    Appeal No. 07-0821
Post Office Box 1034                        Request No. 2007USMS10081
Coleman, FL  33521                          JTR:SRO

Dear Mr. Smith:

 You appealed from the action of the United States Marshals Service (USMS) on your request for access to records pertaining to yourself.

 After carefully considering your appeal, I am affirming, on partly modified grounds, USMS's action on your request.  The records you requested are exempt from the access provision of the Privacy Act of 1974 pursuant to 5 U.S.C. § 552a(j)(2).  See 28 C.F.R. § 16.101 (2006). Because these records are not available to you under the Privacy Act, your request has been reviewed under the Freedom of Information Act in order to afford you the greatest possible access to them.

 USMS properly withheld certain information that is protected from disclosure under the FOIA pursuant to 5 U.S.C. § 552(b)(7)(C), which concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties.

 In addition, USMS referred one page of responsive records to the Federal Bureau of Prisons for processing and direct response to you.  This referral was proper and in accordance with Department of Justice regulations.  See 28 C.F.R. § 16.4(c).

 On appeal, you contend that USMS's search for records was inadequate.  A member of my staff has confirmed that USMS provided you with the releasable portions of all responsive records that it could locate in its files.  Further, I have determined that USMS conducted an adequate, reasonable search for records responsive to your request.

 If you are dissatisfied with my action on your appeal, you may seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B).

                                        Sincerely,

                                        Janice Galli McLeod
                                        Associate Director

USMS

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **GARY SMITH,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| **v.** | **)** | **Case Number: 06-2197 (RWR)** |
| | **)** | |
| **UNITED STATES MARSHALS SERVICE,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |

## ORDER

UPON CONSIDERATION of Defendant's Motion to Dismiss, or, alternatively for Summary Judgment, plaintiff's Opposition thereto, if any, and the entire record herein, it is on this _____ day of _____ , 2007,

ORDERED, that the said motion should be and hereby is granted; and it is

FURTHER ORDERED that Plaintiff's Complaint be and hereby is dismissed.

_____
DATE

_____
RICHARD W. ROBERTS
UNITED STATES DISTRICT JUDGE

Copies of this order to:
GARY L. SMITH, Register No. 52962-019
USP Coleman II
U.S. Penitentiary
P.O. Box 1034
Coleman, FL 33521